## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

SEAN TALIAFERRO,      :
           :
    Petitioner,    :  Civ. No. 11-4714 (RBK)
           :
   v.        :  **OPINION**
           :
KAREN BALICKI, et al.,    :
           :
    Respondents.   :
_____ :

**ROBERT B. KUGLER, U.S.D.J.**

## I.  INTRODUCTION

   Petitioner is a state prisoner currently incarcerated at the South Woods State Prison in Bridgeton, New Jersey. He is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 2006, petitioner was convicted by a jury of second-degree robbery, third-degree receiving stolen property and third-degree eluding. He received a sentence of seventeen years imprisonment with an eighty-five percent period of parole ineligibility on the robbery conviction and five year terms with two-and-one-half years of parole ineligibility on the other two convictions. The sentences on the receiving stolen property and eluding convictions were to run concurrently with each other and consecutive to the robbery sentence.

   Petitioner raises several claims in this habeas petition; they include the following:

1. Impermissible and unduly suggestive pre-trial identification procedure.

2. Trial court error in admitting excited utterances.

3. Ineffective assistance of counsel for permitting the *Wade* hearing video to be played at trial.

4.  Ineffective assistance of counsel for not challenging a jury instruction on in-court identification.

5.  Trial court error in denying a motion to dismiss the robbery charge.

For the following reasons, the habeas petition will be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

On July 23, 2005, at approximately 9:00 p.m., Tina Laspina was walking in Atlantic City when a man got out of an SUV, ran up to her and punched her in the face. The man, whom Laspina later identified as defendant, took her money, ran back to the vehicle, and drove away. Another individual was in the passenger seat. [FN 1] A few minutes later, Laspina gave Officer Dean Dooley a description of the person who robbed her and of the car he was driving. She described the man as a large black male with a bald head and beard wearing a white T-shirt. She described the car as a silver Lexus SUV.

> [FN 1] The individual in the passenger seat was later identified as the co-defendant, Donna Washington, who was tried with defendant and convicted of third-degree receiving stolen property, fourth-degree obstructing the administration of law, and fourth-degree tampering with physical evidence.

Dooley radioed the description to police dispatch and then called for an ambulance for Laspina, who was visibly upset and bleeding from the mouth. She received medical attention on the scene, but refused to go [to] the hospital. She was taken from the scene in Officer Paul Aristizabal's police cruiser.

Sergeant Rodney Ruark heard the police dispatch of the robbery suspect's description. Approximately twenty minutes later, he observed a silver Toyota 4Runner turning into a gas station on Route 30. He saw a bald, black male with a full beard wearing a white t-shirt in the driver's seat. Ruark called Aristizabal and asked him to confirm with Laspina whether there had been a passenger in the suspect's SUV and whether the suspect was bald. Laspina stated that the suspect was bald and she believed a passenger was in the SUV.

---

[1] The factual background is taken from the Superior Court of New Jersey, Appellate Division opinion on petitioner's direct appeal that was decided January 11, 2008. (*See* Dkt. No. 9-5.)

Ruark drove directly behind the SUV and turned on his overhead lights and side spotlight. The SUV did not stop. He then activated his siren and advised dispatch that the SUV was not stopping. Defendant stopped the vehicle approximately a mile later, and ran from the SUV to a nearby apartment complex where he was apprehended. He was placed in the back of Officer DePaul's police car.

Laspina was transferred to Dooley's car. Dooley and DePaul decided to perform a show-up in a nearby vacant lot. DePaul arrived first with defendant. When Dooley pulled into the lot with Laspina, DePaul placed defendant, in handcuffs, in front of Dooley's car headlights. Laspina, from inside Dooley's car, positively identified defendant as the man who had robbed her. The identification took place approximately thirty minutes after the robbery.

Defendant challenged the identification procedure and on February 1, 2006, the court conducted a *Wade* [FN 2] hearing. At the hearing, conducted just over six months after the incident took place, Laspina testified that she no longer remembered what the robber looked like, but she did recognize defendant at the time of her identification as the man who robbed her. She testified that the man the police showed her "looked just like [the robber]," but she was not one-hundred percent certain. Laspina testified that she had used heroin on the afternoon that she was robbed and that she had been "under the influence," but the drug's effects had worn off by the time she was assaulted.

> [FN 2] *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967).

Dooley testified that Laspina was afraid of defendant during the show-up identification and crouched down in the seat of the police car; that she was attentive throughout the process and did not appear to be under the influence of any substances. The court concluded that the identification was not impermissibly suggestive.

Trial commenced on February 15, 2006, and concluded the next day. Laspina was subpoenaed to testify at trial, but did not appear. The State moved to admit her statements to Dooley immediately after the robbery and at the show-up as excited utterances. The testimony would include Dooley's observations of Laspina's demeanor, that she was bleeding and crying, and that she was speaking so rapidly that the officer could barely understand her and

had to tell her to slow down.  The court admitted the statements as excited utterances over defendant's objection, but limited its ruling to those statements made to Dooley during their initial contact.

The State also attempted to have the court admit Laspina's response to Aristizabal after Ruark called him to confirm with Laspina the description of the driver, and whether a passenger was in the vehicle.  The court did not rule on that request; the judge said he would hear an objection "at the time [Ruark testified] if it's appropriate."  When the State later elicited that testimony from Ruark, defense counsel did not object.

Immediately after the court admitted Laspina's statements to Dooley, defense counsel moved for admission of the videotape of Laspina's *Wade* hearing testimony.  The court did not immediately rule on its admissibility, stating that it would wait until after the State's case was completed to determine if Laspina was unavailable to testify.  The next day, the issue was raised again and defense counsel asserted that he wanted to admit the tape because Laspina did not appear in court.  Defense counsel stated that his cross-examination of her at the *Wade* hearing "suffice[s] with respect to its depth with respect to . . . issues that are going to be before the jury."  The court addressed defendant personally to confirm that he wanted the tape admitted, and defendant answered affirmatively.  Prior to the tape being played for the jury, the court found that Laspina was unavailable to testify, and that defendant had a full and complete opportunity to cross-examine her during the *Wade* hearing.

(Dkt. No. 9-5 at p. 3-7.)

After petitioner was convicted and sentenced, he appealed to the New Jersey Superior Court, Appellate Division.  On January 11, 2008, the Appellate Division affirmed the convictions, but vacated and remanded for resentencing.  The New Jersey Supreme Court denied certification on petitioner's direct appeal on April 3, 2008.

Petitioner then sought relief through a post-conviction relief ("PCR") petition.  The Superior Court denied relief on that petition.  The Appellate Division affirmed that decision on February 4, 2011.  The New Jersey Supreme Court denied certification on June 16, 2011.

On August 16, 2011, petitioner filed the instant federal habeas petition. Respondents have filed an answer and petitioner has filed a traverse. The matter is now ripe for adjudication.

### III.    HABEAS CORPUS LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id.* (citations omitted). A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its

independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, - U.S. -, 131 S. Ct. 1388, 1398 (2011). The petitioner carries the burden of proof and with respect to review under § 2254(d)(1), that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Additionally, AEDPA deference is not excused when state courts issue summary rulings on claims as "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, - U.S. -, 131 S. Ct. 770, 784-85 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

**IV.    DISCUSSION**

A.  <u>Claim I – Identification Procedure</u>

In Claim I, petitioner argues that the pre-trial identification procedure used by police when Laspina identified him was impermissibly suggestive and violated his due process rights.

The last reasoned decision on this claim was from the Appellate Division on petitioner's direct appeal which analyzed it as follows:

> We begin our discussion with defendant's challenge to the out-of-court identification. He argues that the show-up was impermissibly suggestive because the police made suggestive statements to Laspina prior to the identification; defendant was handcuffed; and he was the only suspect shown to Laspina. Defendant also argues that the identification was not reliable because Laspina had little opportunity to view the assailant; her description of the assailant was vague; she was allegedly thirty-five feet away from defendant during the show-up; her level of certainty as to the identification was not high; and she had been under the effects of heroin.
>
> Following the *Wade* hearing, the court held that the identification was not impermissibly suggestive because the "victim was requested to observe and see whether she could make [an] identification. She was not told much beyond that she was going to be brought in to make some kind of identification." The Court also held that the identification was reliable because the victim made an "instantaneous and positive identification" of defendant, she did not appear to be under the influence of drugs, she accurately described defendant to the police, and only a short time had passed, approximately thirty minutes, between the robbery and the show-up.
>
> In conducting a *Wade* hearing, a court must undertake a two-step analysis to determine, first, whether the identification procedure was impermissibly suggestive, and if it was, whether it was nonetheless reliable. *State v. Herrera*, 187 N.J. 493, 503-04 (2006). One-on-one show-ups are not per se impermissibly suggestive. *Id.* at 504. Nor does the fact that a suspect is handcuffed and in police custody automatically render the identification impermissibly suggestive. *State v. Wilson*, 362 N.J. Super. 319, 327 (App. Div.), *certif. denied*, 178 N.J. 250 (2003); *see also State v. Wilkerson*, 60 N.J. 452, 461 (1972) (one-on-one identifications made at or near the scene of the initial observation within a reasonably short time "comes well within the exception to the *Wade* rule").
>
> To determine reliability, a court should consider the following factors and weigh them against the corrupting effect of the impermissibly suggestive identification: "'the opportunity of the witness to view the criminal at the time of the crime, the witness'

degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" *Herrera*, *supra*, 187 N.J. at 503 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253, 53 L. Ed. 2d 140, 154 (1977)).

In *Herrera*, *supra*, the police made several statements to the victim prior to taking him to the hospital where the defendant was to conduct a one-on-one show-up. *Id.* at 497. Prior to the show-up, officers told the victim that

> they had located his car and that they would take him "to [the hospital to] identify the person." . . . [They] "found your car, we located your car with somebody in it, we want you to come with us to identify the person." . . . [They] told him that the individual was now in the hospital and that they would take [the victim] to "the hospital to identify [the man]." . . . [The victim's] "vehicle was recovered, . . . there was an occupant, and that we were going out there to look, let him look at the occupant."
> [*Id.* at 506.]

The Court found that the officers did not follow the Attorney General's Guidelines for conducting identifications to "avoid saying anything to the witness that may influence the witness' selection." *Ibid.* n.3 (citation omitted). The Court held that the police officers' statements, combined with the inherent suggestability of a show-up, made the victim's show-up identification impermissibly suggestive. *Ibid.*

The Court then weighed the *Manson* factors against the corrupting effects of the impermissibly suggestive show-up and determined that the identification was nonetheless reliable because the victim had a sufficient opportunity to view the defendant, had seen the defendant on previous occasions, provided an accurate description of the defendant, was certain of the identification at the confrontation, and identified the defendant within five hours of the crime. *Id.* at 507-09.

In this case, the police did not follow the Attorney General Guidelines, which generally require lineups. Instead, the police conducted a show-up. The police also made statements to the victim prior to the identification. That said, we agree with the trial judge that the identification was admissible. When Laspina was

asked by defense counsel, "[the police] bring the defendant and what do they say to you?  Do they say take a look at this person?  Is this the guy?", she answered "[y]es."  Aristizabal testified that prior to transferring Laspina to Dooley's car, he asked her "if she would come back with me . . . because there might have been a . . . male that could have been involved in her robbery to see if she could possibly identify him. . . . I asked her if she could look at this person and see if it could possibly be the male that had robbed her."  Dooley testified that as they pulled into the location of the show-up, he "might have said . . . this possibly [is] someone involved in the incident . . . was this the person involved in the incident or . . . something along those lines."

None of the questions or statements the officers made to Laspina suggested that the person about to be shown to her was "the man" who assaulted her as was the case in *Herrera*, *supra*, 187 N.J. at 497.  Nor was the fact that defendant was handcuffed impermissibly suggestive.  *Wilson*, *supra*, 362 N.J. Super. at 327.  Here, each time the police spoke with the victim, they spoke only in terms of there being a possibility that the person she was to be shown was the person who attacked her.  The possibility that the person being shown to the victim might be the assailant is implicit in the fact that the victim is being shown the person.  In *Herrera*, *supra*, the police told the victim that he was being taken to identify "the person" or "the occupant," of his stolen car.  187 N.J. at 506.  This phrasing is inherently suggestive, in that it takes for granted the "the person" or "the occupant" is the guilty party.  No such language was used here.  The police simply told Laspina that there "might" be someone that she could "possibly" identify.  This does not make the identification impermissibly suggestive.

Analyzing the second part of the test, reliability, is only necessary when the identification was impermissibly suggestive.  Although we conclude that the identification was not impermissibly suggestive, we will nevertheless discuss the reliability of the identification.  In doing so, we conclude that the identification was reliable.

Laspina testified that she watched defendant approach her from several feet away and get within arms length to hit her.  She told Dooley that the suspect was a large black male with a bald head and beard wearing a white T-shirt driving a silver SUV.  Her description of the suspect proved accurate as defendant fit that description when he was arrested.

At the time of the identification, Laspina appeared certain of the identification.  Dooley testified that immediately after defendant was removed from the back of the police car, Laspina slid down in her seat, as if in fear, and said "that's him."  At the *Wade* hearing, she testified that she identified defendant at the show-up because she recognized him as the man who had hit her.  On cross-examination, when she was questioned about how clearly she saw defendant, she reiterated that she identified him at the show-up "[b]ecause [he] looked just like the man."  She stated that her memory of her attacker was better on the night it happened as compared with the day of the hearing.  The time between the robbery and the identification was approximately thirty minutes.  These factors weigh in favor of finding the identification reliable.

We are cognizant that Laspina testified that she had taken heroin that day.  Nevertheless, Dooley testified at the *Wade* hearing that Laspina did not appear to be under the influence of any substance, and Laspina testified that the effects of the heroin had worn off by the time she was assaulted.  On these facts, it would be speculation to conclude that her use of heroin earlier in the day rendered the identification unreliable.

(Dkt. No. 9-5 at p. 7-13.)

In determining whether the state court's decision was an unreasonable application of

clearly established federal law, the applicable law is as follows:

"[a]n identification procedure that is both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification violates due process."  *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006) (citing *Manson v. Brathwaite*, 432 U.S. 98, 107 (1977)).  "Unnecessary suggestiveness contains two component parts:  that concerning the suggestiveness of the identification and that concerning whether there was some good reason for the failure to resort to less suggestive procedures."  *Id.* (internal quotation marks omitted).  An unnecessarily suggestive identification procedure does not create a substantial risk of misidentification if it "possesses sufficient aspects of reliability" given the "totality of the circumstances."  *Id.* at 139.  Factors we consider in that analysis include:  "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness'[s] degree of attention; (3) the accuracy of the witness'[s] prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime

> and confrontation." *Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199
> (1972)).

*United States v. Diaz*, 444 F. App'x 551, 554-55 (3d Cir. 2011).

As stated above, the Appellate Division determined that the identification procedure was not unnecessarily suggestive, but that even if it was, it possessed sufficient aspects of reliability. The Appellate Division correctly identified and applied controlling United States Supreme Court precedent governing show-up identification procedures. The Appellate Division's decision was not an unreasonable application of clearly established federal law nor was it based on an unreasonable determination of the facts. While a show-up procedure like the one used in this case is "inherently suggestive," *see id.* at 555 (citing *Brownlee*, 454 F.3d at 138), this, in and of itself, does not entitle petitioner to habeas relief.

Petitioner claims that the identification procedure was unduly suggestive because: (1) Laspina was told by two officers that they had a man in custody who may have been involved; (2) petitioner was in handcuffs during the show-up identification; and (3) petitioner was the only suspect who Laspina viewed. However, as aptly noted by the Appellate Division, the officer's comments to Laspina did not suggest that petitioner was in fact the culprit. Furthermore, the fact that petitioner was handcuffed and in front of an officer's police car during the show-up procedure did not make the identification procedure "unnecessarily suggestive." *Id.* ("[I]f a suspect is handcuffed and surrounded by police officers during an on-scene show-up, the show-up is not automatically unduly suggestive."). Additionally, "whether an identification procedure is 'unnecessarily suggestive' rests not only on its effect, its 'suggestiveness,' but also on its cause, whether there was 'some good reason [(or motivation)] for failure to resort to [a] less suggestive procedure[ ].'" *Id.* (quoting *Brownlee*, 454 F.3d at 137). In this case, Laspina's prompt identification of petitioner as the culprit was accomplished while it was still fresh in her

memory and would have allowed police to quickly release petitioner if he was not identified as the culprit by Laspina. *See id.* at 555-56 (noting that show-up identification was done when it was fresh in witness's memory that would allow police to release individual and continue their search for the criminal such that motivations "were reasonably sufficient to justify failure to resort to a less suggestive procedure").

Furthermore, even if petitioner could show that the show-up was unduly suggestive, he would still have to show that the Appellate Division's decision that that the identification possessed sufficient aspects of reliability was an unreasonable application of clearly established federal law or resulted in a decision based on an unreasonable determination of the facts. The Appellate Division properly laid out the applicable factors to determine whether the identification possessed sufficient aspect of reliability. Applying those factors to the facts of this case, the Appellate Division noted that Laspina provided an accurate description of the culprit as he had gotten close to her during the robbery. Furthermore, the Appellate Division noted that Laspina appeared certain of the identification at the time. Finally, while the Appellate Division noted that Laspina stated that she took heroin on the day of the incident, there was also testimony from officers that she did not appear to be under the influence of drugs at the time. Thus, petitioner fails to show that the Appellate Division unreasonable applied clearly established federal law as it related to the identification possessing sufficient aspects of reliability.

For the above stated reasons, petitioner does not show that the Appellate Division's decision was contrary to clearly established federal law or resulted in a decision based on an unreasonable determination of the facts. Therefore, habeas relief is not warranted on this claim.

B. Claim II – Excited Utterances

In Claim II, petitioner argues that the trial court erred by admitting the excited utterances made by Laspina during the course of the police investigation and Laspina's subsequent identification. He claims that admitting these statements at trial violated his constitutional rights of confrontation and due process. The last reasoned decision on this claim was from the Appellate Division on petitioner's direct appeal which stated as follows:

> Next, we turn to defendant's challenge to the admission of Laspina's statements as excited utterances. Defendant argues that the court erred in admitting Laspina's description of the suspect to Dooley, her confirmation of the description, and her statements at the show up as excited utterances in violation of his Sixth Amendment right of confrontation. *See Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).
>
> The trial court held that they were excited utterances because the statements occurred within minutes of the robbery, and Laspina was still under the shock of the robbery. The following day, the trial court clarified its finding on the admissibility of the statements, concluding that Laspina was an unavailable witness and that defendant had an opportunity to confront and cross-examine her at the *Wade* hearing. *See* N.J.R.E. 804(a), (b).
>
> What is commonly referred to as the excited utterance exception to the hearsay rule, N.J.R.E. 803(c)(2), provides that out-of-court statements offered for the truth of the matter asserted may be admitted if the statements "1) [relate] to a startling event or condition; (2) [are] made while the declarant was under the stress of excitement caused by the event or condition; and 3) [are made] without opportunity to deliberate or fabricate." *State v. Branch*, 182 N.J. 338, 365 (2005) (citation omitted). The excited utterance exception should not, however, be used as a vehicle for introducing past narratives from non-testifying defendants. *Ibid*.
>
> Here, Laspina's initial statements to Dooley meet the first prong of the *Branch* test because her statements related directly to the robbery in that she provided a description of the suspect and the events that took place. The second prong is also met because she was still under the stress and excitement of the robbery, visibly upset and bleeding, when she made the statements, just minutes after the robbery.

The third prong is met because Laspina has no opportunity to deliberate or fabricate her statement. When determining whether there was an opportunity to deliberate or fabricate, a court should "consider the element of time, the circumstances of the incident, the mental and physical condition of the declarant, and the nature of the utterance." *Id.* at 366. (citation omitted). Laspina's initial statements to Dooley were made within a few minutes of the crime. She had been punched in the face by an unknown assailant and was bleeding, shaking and crying when she approached Dooley; and her statements were made in an excited unreflective manner. She approached Dooley and spontaneously told him that she had just been "beat up and robbed." Dooley had a hard time understanding her because she had difficulty speaking from shaking and crying. Dooley asked her what happened and she gave him the description of defendant and of the events that took place. This situation provided her no opportunity to deliberate or fabricate her statement.

Next, we turn to Ruark's testimony that Aristizabal told him that the victim confirmed the description of the man who assaulted her and that a passenger was in the car with him. Ruark did not repeat the suspect's description; he testified that when he compared the description of the person who he observed driving the car with the confirmation of the description that Laspina gave to Aristizabal, the descriptions matched. Defendant did not object to that testimony. If no objection is made to the allegedly improper evidence, we infer that defendant counsel did not believe the evidence was prejudicial. *State v. Macon*, 57 N.J. 325, 333 (1971); *see also State v. Timmendequas*, 161 N.J. 515, 575-76 (1999), *cert. denied*, 534 U.S. 858, 122 S. Ct. 136, 151 L. Ed. 2d 89 (2001). The testimony is then analyzed under the plain error rule; that is, whether the error had the clear capacity to bring about an unjust result. R. 2:10-2. This in turn is analyzed within the context of the entire case, not limiting the analysis solely to the improper evidence. *Timmendequas*, *supra*, 161 N.J. at 575. Here, in the context of the totality of the trial evidence, we find no plain error.

Next, defendant challenges the victim's statement when she identified him approximately one-half hour after the attack. That statement too was admissible as an excited utterance. At the show-up, when defendant was placed in front of the car headlights, she exclaimed, "that's him, but I'm scared." Given the brief period of time between the attack and the identification, and Laspina's demeanor at the time she observed defendant, her statement possessed the indicia of trustworthiness to qualify it for admission

for substantially the same reasons as her initial statements to Dooley. Additionally, her exposure to her attacker was in itself a startling event. As soon as she was shown defendant, she spontaneously exclaimed, "that's him . . . I'm scared" and hid in the seat of the police car. The immediacy of her words and actions indicate that she was still under the stress of being exposed to her attacker and had no time to deliberate or fabricate, qualifying her statements as excited utterances.

Laspina's initial statements to Dooley and her statements at the show-up were also admissible under N.J.R.E. 804(b)(1)(A). Where a witness is unavailable to testify, testimony given in a prior hearing is admissible if the "party against whom the testimony is now offered had an opportunity and similar motive in the prior . . . hearing . . . to develop the testimony by examination or cross-examination. N.J.R.E. 804(b)(1)(A). The declarant, Laspina, was unavailable because she refused to appear to testify after being subpoenaed by the State. *See* N.J.R.E. 804(a)(4).

At the *Wade* hearing, defendant had the opportunity to fully cross-examine Laspina. The transcript of the hearing contains over twenty-one pages of cross-examination. Defense counsel cross-examined Laspina on her drug problem; her use of drugs on the day of the robbery; her mistaken description of the suspect's SUV as a Lexus; her inability to recognize defendant at the hearing or remember clearly events from that night; how quickly the incident took place and her limited time to view the suspect; inconsistencies between her memory of events and those of the police officers that testified; her inability to see defendant during the show-up; her motives and certainty in making an identification of defendant; and her motives in testifying for the State. Defendant's motive in discrediting her at the hearing was the same as it would have been at trial.

For substantially the same reasons, defendant's confrontation rights under the Sixth Amendment were not violated by the admission of Laspina's out-of-court statements. Though a defendant's Sixth Amendment right may be abridged by the admission of a testimonial out-of-court statement, if that witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness, the defendant's Sixth Amendment rights are satisfied. *Davis*, *supra*, 547 U.S. at -, 126 S. Ct. at 2273, 165 L. Ed. 2d at 236. Here, assuming Laspina's out-of-court statements were testimonial, because of the extensive opportunity defendant had to cross-examine her at the *Wade* hearing those statements were properly admitted in evidence. Although "the

> right of a party to confront witnesses in court is one of the
> principal values protected by the hearsay rule," *Branch*, *supra*, 182
> N.J. at 342, defendant was not denied that right.

(Dkt. No. 9-5 at p. 13-18.)

The Confrontation Clause of the Sixth Amendment states that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "The Fourteenth Amendment renders the Clause binding on the States." *Michigan v. Bryant*, - U.S. -, 131 S. Ct. 1143, 1152 (2011) (citing *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The United States Supreme Court has stated with respect to the Confrontation Clause that, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 US. 36, 59 (2004) (footnote omitted). "As to the second requirement, the Confrontation Clause requires that a defendant have had 'a full and fair opportunity to probe and expose [testimonial] infirmities' of an unavailable government witness in order for that witness's prior testimony to be admissible." *Ross v. Dist. Attorney of Cnty. of Allegheny*, 672 F.3d 198, 206-07 (3d Cir. 2012) (citing *United Staets v. Owens*, 484 U.S. 554, 558 (1988) (quoting *Delaware v. Fensterer*, 474 U.S. 15 (1985))). The Confrontation Clause applies only to testimonial hearsay that is admitted to establish the truth of the matter asserted. *See Davis v. Washington*, 547 U.S. 813, 823-25 (2006). "[S]tatements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial are testimonial." *United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005).

In this case, the Appellate Division's decision on petitioner's Confrontation Clause argument was not an unreasonable application of clearly established federal law. Indeed, the

Appellate Division noted that Laspina was unavailable to testify. Furthermore, the admission of her statements did not run afoul of the Confrontation Clause as petitioner had a full and fair opportunity to cross examine Laspina at the *Wade* hearing.[2]

Petitioner also argues that the admission of Laspina's statements as "excited utterances" violated his due process rights. At the outset, to the extent that petitioner is arguing that the state court erred in concluding that the statements made by Laspina to the officers were "excited utterances," this is a state evidentiary question that is not appropriate for this Court to review in these federal habeas proceedings. *See Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008) ("Admissibility of evidence is a state law issue.") (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). The due process inquiry that is applicable to this claim is whether the state court's ruling was so arbitrary or prejudicial that it rendered the trial fundamentally unfair. *See Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994); *see also Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001) (noting that to show that an evidentiary error rises to the level of a due process violation, a petitioner must show "that it was of such magnitude as to undermine the fundamental fairness of the entire trial"). The United States Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990).

Petitioner fails to show that the admission of Laspina's out-of-court statements violated his due process rights. The videotape of the *Wade* hearing was admitted into evidence. The jury was therefore able to weigh the validity and credibility of her out-of-court statements. Indeed, Laspina was cross-examined at the *Wade* hearing. Additionally, the detectives who Laspina's

---

[2] Petitioner contends in his petition that the "trial court had already ruled that defense counsel had not fully cross-examined the alleged victim at the prior [*W]ade* hearing." (Dkt. No. 1 at p. 10.) However, the trial court specifically held that petitioner had a full and complete opportunity to cross-examine Laspina at the *Wade* hearing. (*See* Dkt. No. 9-23 at p. 48.)

spoke to were subject to cross-examination at trial. Finally, as stated in Claim I, Laspina was not influenced by the police with respect to her statements. Accordingly, petitioner has failed to show that his due process rights were violated by the inclusion of this evidence at trial. *Accord Villaran v. Moore*, No. 03-4105, 2006 WL 2583440, at *9 (D.N.J. Sept. 6, 2006) (finding no due process violation where (1) jury was able to view videotape competency hearing of witness which allowed them to weigh the validity and credibility of her out-of-court statements; (2) jury was privy to cross-examination of investigator who spoke to witness which permitted jury to weigh investigator's recollection of witness's statements; and (3) witness was not influenced by investigator's questioning). Therefore, for the foregoing reasons, petitioner is not entitled to federal habeas relief on this claim.

C. Claim III – Ineffective Assistance of Counsel – *Wade* Hearing Video

In Claim III, petitioner argues that trial counsel was ineffective when he admitted the *Wade* hearing video into evidence. The last reasoned decision on this claim was from the Appellate Division during petitioner's PCR proceedings which stated as follows:

> "For a defendant to establish a case of ineffective assistance of counsel, the defendant must show that '[defense] counsel's performance was deficient,' and that 'there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Nunez-Valdez*, 200 N.J. 129, 138-39 (2009) (quoting *State v. Preciose*, 129 N.J. 451, 463-64 (1992)); *see also Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698 (1984).

> "[T]here is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Echols*, 199 N.J. 344, 358 (2007) (quoting *Strickland*, *supra*, 466 U.S. at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694). Moreover, a "challenged error must be so serious as to undermine the court's confidence in defendant's conviction." *Id.* at 359. It is defendant who bears the burden of proof to establish the grounds for PCR by a preponderance of the credible evidence. *Id.* at 357.

The Law Division should grant a defendant an evidentiary hearing on a claim of ineffective assistance of counsel whenever a prima facie case has been established by a defendant. *State v. Marshall*, 148 N.J. 89, 157-58, *cert. denied*, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997); *Preciose, supra*, 129 N.J. at 462; *State v. Moore*, 273 N.J. Super. 118, 126-27 (App. Div.), *certif. denied*, 137 N.J. 311 (1994).

When evaluating whether a defendant has presented a prima facie case, the PCR judge "should view the facts in the light most favorable to the defendant." *State v. Cummings*, 321 N.J. Super. 154, 170 (App. Div.), *certif. denied*, 162 N.J. 199 (1999). If the PCR judge determines that the defendant could possibly be entitled to relief, the defendant is entitled to an evidentiary hearing unless "the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, or that the defendant's allegations are too vague, conclusory, or speculative to warrant an evidentiary hearing, then an evidentiary hearing need not be granted." *Marshall*, *supra*, 148 N.J. at 158 (internal citations omitted).

From our review of the record, we are satisfied that none of defendant's attorneys was ineffective in his defense. In light of defense counsel's trial tactic to portray Laspina as an unreliable person – a witness not to be believed – his invocation and presentation of her *Wade* videotape for the jury was well within the spectrum of reasonableness. By highlighting Laspina's substance abuse problems in his direct remarks to the jury, defense counsel sought to effectively weave her appearance and testimony during the *Wade* proceeding into a persuasive argument that her identification of defendant was not worthy of belief.

In our review, we must "evaluate the conduct from the attorney's perspective at the time of trial, being careful to eliminate the distorting effects of hindsight." *State v. Buonadonna*, 122 N.J. 22, 42 (1991). Defense counsel is not considered ineffective simply because trial strategy did not produce the desired effect. *State v. Sheika*, 337 N.J. Super. 228, 242-43 (App. Div.), *certif. denied*, 169 N.J. 609 (2001). Strategic miscalculations or trial mistakes by defense counsel are not sufficient to call for reversal except in those atypical instances where they are of such significance as to frustrate the fundamental guarantee of a fair trial. *State v. Thomas*, 245 N.J. Super. 428, 432 (App. Div. 1991), *appeal dismissed*, 130 N.J. 588 (1992).

> Similarly, we do not detect any lack of diligence, completeness, or rationality in the representations provided by appellate and PCR counsel. Whether any of such attorneys' omissions were deficient within the meaning of *Strickland* is debatable. However, even if there were such shortcomings, none was so significant that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, *supra*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.
>
> In light of our conclusion that defendant's defense attorney adequately represented him at trial, and that the subsequent attorneys assisting defendant were similarly adequate, it is clear to us that the PCR judge correctly determined that an evidentiary hearing was unnecessary, that defendant did not suffer the ineffective assistance of counsel, and that defendant was not entitled to post-conviction relief.

(Dkt. No. 9-15 at p. 8-11.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating an ineffective assistance of counsel claim. First, the petitioner must show that considering all of the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013). Petitioner must identify acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. The federal court must then determine whether in light of all of the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. *See id.*

Second, a petitioner must affirmatively show prejudice, which is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See id.* at 694; *see also McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "With respect to the sequence of the two prongs, the

*Strickland* Court held that 'a court need not determine whether counsel's performance was

deficient before examining the prejudice suffered by the defendant as a result of the alleged

deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, which we expect will often be so, that course should be followed.'" *Rainey*

*v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

Additionally, in assessing an ineffective assistance of counsel claim under AEDPA, the

Supreme Court has noted that:

> The pivotal question is whether the state court's application of the
> *Strickland* standard was unreasonable. This is different from
> asking whether defense counsel's performance fell below
> *Strickland*'s standard. Were that the inquiry, the analysis would be
> no different than if, for example, this Court were adjudicating a
> *Strickland* claim on direct review of a criminal conviction in a
> United States district court. Under AEDPA, though, it is a
> necessary premise that the two questions are different. For
> purposes of § 2254(d)(1), an *unreasonable* application of federal
> law is different from an *incorrect* application of federal law. A
> state court must be granted a deference and latitude that are not in
> operation when the case involves review under the *Strickland*
> standard itself.

*Harrington,* 131 S. Ct. at 785 (internal quotation marks and citation omitted) (emphasis in

original).

The Court finds that the denial of this claim by the Appellate Division was not an

unreasonable application of the *Strickland* standard. The Appellate Division laid out the proper

standard for reviewing petitioner's ineffective assistance of counsel claim. It determined that

admitting the *Wade* hearing video supported a trial strategy that portrayed Laspina as an

unreliable person. The state court determined that this fell within the spectrum of reasonableness

based on petitioner's defense theory to discredit Laspina. This was not an unreasonable

application of the first prong of *Strickland*. *Accord Sierra v. Bartowski*, No. 11-1860, 2012 WL

4504246, at *26 (D.N.J. Sept. 27, 2012) (stating where counsel could have made reasonable strategic choice regarding avoiding introducing evidence that would undermine petitioner's theory, federal habeas court has no basis to second-guess that choice under first prong of *Strickland*).

In addition to finding that petitioner failed to satisfy the first prong of the *Strickland* test, the Appellate Division also determined that petitioner failed to show prejudice. Even assuming *arguendo* that petitioner could show that the state court's analysis under the first prong of *Strickland* was unreasonable, the state court's analysis was not an unreasonable application of the second prong of the *Strickland* test. The case against petitioner included the positive identification of petitioner by the victim, Laspina, shortly after the incident. As explained *supra*, the identification procedure was not unduly suggestive and contained sufficient indicia of reliability. Therefore, even if petitioner showed that counsel's performance fell below an objective standard of reasonableness with respect to introducing the *Wade* hearing videotape into evidence, petitioner fails to show that there was a reasonable probability that the outcome of the proceeding would have been different in light of the additional evidence against him, which included a positive identification by the victim. *Accord Webb v. Rozum*, 336 F. App'x 182, 185 (3d Cir. 2009) ("[T]he Superior Court's adjudication of Webb's claim did not result in a decision that was contrary to, or an unreasonable application of, *Strickland*. Given the restaurant patron's identification of Webb, the other evidence presented against him, and our 'doubly deferential' review in this case . . . we cannot say that Webb has demonstrated prejudice.") (internal citation omitted). Accordingly, petitioner is not entitled to federal habeas relief on this claim.

D. Claim IV – Ineffective Assistance of Counsel – Jury Charge

In Claim IV, petitioner argues that trial and appellate counsel were ineffective for not challenging the trial court's in-court identification jury charge.  At the outset, respondents argue that this claim is unexhausted.  They assert that "to the extent petitioner assailed trial and appellate counsel in regard to the identification instruction, he did so in the context of an argument assailing the representation provided by PCR counsel."  (Dkt. No. 9 at p. 9.)  The Court disagrees.  For example, petitioner argued in the PCR proceedings that appellate counsel was ineffective based on "the model jury charge on In-Court Identification."  (*See* Dkt. No. 9-13 at p. 21.)  Additionally, petitioner argued that "Trial Counsel was ineffective for not requesting a fact-specific jury charge on Out-of-Court Identification only, tailored to the case at bar."  (*See id.* at p. 27.)  In his petition for certification to the New Jersey Supreme Court, petitioner relied on the arguments set forth in his counseled and pro se supplemental brief.  Accordingly, the Court finds that this claim is exhausted.[3]  Nevertheless, the Court agrees with respondents that to the extent that petitioner asserts within this claim that PCR counsel was ineffective, it is not cognizable in a federal habeas claim.  *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.).

---

[3] Petitioner claims in his petition that the Appellate Division did not address this claim during the PCR proceedings such that *de novo* review applies to this claim.  However, as stated in *supra* Part IV.C, the Appellate Division determined that petitioner failed to show that he was prejudiced on his ineffective assistance of counsel claims.  Furthermore, the Appellate Division also noted that "[a]ll of defendant's other arguments, including those contained in the pro se supplemental brief, are without sufficient merit to warrant discussion in a written opinion." (Dkt. No. 9-15 at p. 11.)  This summary denial of petitioner's claims is considered a decision on the merits, subjecting this claim to AEDPA, rather than *de novo* review.  *See Harrington*, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary.").

With respect to petitioner's ineffective assistance of counsel claim, it is important to examine the jury instruction at issue to determine if petitioner was prejudiced. The jury was instructed as follows by the trial court:

> Now, identification is a question in this case, and I'm going to instruct you as to the issue of identification. The defendant, Sean Taliaferro, as part of his general denial of guilt, contends that the State has not presented sufficient, reliable evidence to establish beyond a reasonable doubt that he is the person who committed the alleged offense of robbery. The burden of proving the identity of the person who committed the crime is upon the State. For you to find this defendant guilty, the State must prove beyond a reasonable doubt that this defendant is the person who committed the crime. The defendant has neither the burden nor the duty to show that the crime, if committed, was committed by someone else or to prove the identity of that other person. You must determine, therefore, not only whether the State has proven each and every element of the offense charged beyond a reasonable doubt that this defendant, Sean Taliaferro, is the person who committed the crime of robbery.

> The State has offered the testimony of Officer Dooley and Officer Aristizabal, as well as the videotaped testimony of Tina Laspina to support its contention that Sean Taliaferro was the person who committed the robbery of Tina Laspina. The State also offered testimony that on a prior occasion before this trial, Tina Laspina identified the defendant as the person who committed this offense of robbery. According to Miss Laspina, identification of the defendant was based upon observations and perceptions she made of the perpetrator at the time the offense was being committed. It is your function to determine whether the witness's identification of the defendant is reliable and believable or whether it is based on a mistake or for any reason is not worthy of belief. You must decide whether it is sufficiently reliable evidence upon which to conclude that this defendant, Sean Taliaferro, is the person who committed the offense of robbery.

> In evaluating the identifications, you should consider the observations and perceptions on which the identifications were based and the witness's ability to make those observations and perceptions. If you determine that an out-of-court identification is not reliable you may still consider the witness's in-court identification of the defendant if you find it reliable. In this case,

the identification was on videotape.  Miss Laspina, if you recall,
was not present in Court to testify.

Unless the in-court identification resulted from the witness's
identification or perceptions of the perpetrator during the
commission of the offense rather than being the product of an
impression gained at the out-of-court identification procedure, it
should be afforded no weight.  The ultimate issues of the
trustworthiness of both the in-court and out-of-court identifications
are for you to decide.

(Dkt. No. 9-24 at p. 26-29.)

Petitioner raises a few issues with respect to purported errors in the jury instructions.

Petitioner argues that the trial judge misled the jury by having them consider that the two police

officers also made identifications.  (*See* Dkt. No. 11 at p. 22 ("The average layperson not familiar

with the legal interpretations of the law, when told by the trial judge to basically consider the

identification testimony by two police officers, especially given the fact that Officer Dooley

identified petitioner in court can easily mislead and confuse the jury.").)  Petitioner also argues

that the above quoted jury instruction relieved the state of its burden to prove identification

beyond a reasonable doubt because it referenced an in-court identification when Laspina's

identification was outside of the courtroom setting.

A faulty jury instruction constitutes a due process violation itself so infected the entire

trial that the resulting conviction violates due process.  *See Middleton v. McNeil*, 541 U.S. 433,

437 (2004); *Estelle*, 502 U.S. at 71-72.  The instruction must be more than merely erroneous as

petitioner must show that there was a "reasonable likelihood that the jury has applied the

challenged instruction in a way that violates the Constitution."  *Middleton*, 541 U.S. at 437.  The

instruction must not be judged in artificial isolation, "but must be considered in the context of the

instructions as a whole and the trial record."  *Estelle*, 502 U.S. at 72.  In this case, petitioner is

proceeding on this claim as an ineffective assistance of counsel claim.  Thus, petitioner must also

show that counsel's performance was deficient and that he was prejudiced by failing to object to the jury instruction. *Lusick v. Palakovich*, 270 F. App'x 108, 110 (3d Cir. 2008). Additionally, it is worth noting that "claims of ineffective assistance of appellate counsel are also governed by the *Strickland* standard." *See id.* (citing *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000).

Petitioner has failed to show that he was prejudiced by counsel's failure to object to the identification jury charge. First, contrary to petitioner's assertion, the instructions did not relieve the State of its burden to prove the elements of the offense beyond a reasonable doubt. Indeed, the trial court reiterated throughout the charge that the burden of proof is always with the State. (*See* Dkt. No. 9-24 at p. 18-19 ("The burden of proving each element of a charge beyond a reasonable doubt rests upon the State and that burden never shifts to the defendant."); *see also id.* at p. 27 ("The burden of proving the identity of the person who committed the crime is upon the State.").) The jury is presumed to have followed these instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Petitioner also argues that the identification charge improperly stated that there was an in-court identification and that police officers also identified the petitioner. The instructions quoted above did not indicate that the officers identified the petitioner as the culprit. While the instructions mentioned "identifications," only Laspina as the victim identified petitioner as the culprit. The instructions also mentioned the jury's duty with respect to an" in-court identification," when Laspina only identified petitioner as the culprit out of court. Nevertheless, in light of the evidence against petitioner (which included the positive identification by Laspina), along with viewing the jury instructions as a whole, petitioner fails to show that the Appellate Division's denial of this claim was an unreasonable application of *Strickland*. He fails to show to a reasonable probability that the outcome of the proceeding

would have been different had counsel objected to the jury instructions because the instructions mentioned "identifications" and an "in-court identification." Accordingly, petitioner is not entitled to federal habeas relief on Claim IV.

E. Claim V – Trial Court Error in Denying Motion to Dismiss Robbery Charge

Finally, petitioner argues that his due process rights were violated when the trial court denied his motion to dismiss the robbery charge. Petitioner states that this claim is predicated on the argument that the identification procedure was unduly suggestive. Thus, according to petitioner, if the identification procedure is deemed impermissibly suggestive, the robbery charge cannot stand because the "entire conviction by the state was hinged on the identification of the robber made by the alleged victim." (Dkt. No. 1 at p. 11.)

Respondents argue that this claim is not cognizable in these federal habeas proceedings and is unexhausted. Even assuming *arguendo* that the claim is unexhausted, a federal court can address the merits of an unexhausted claim "in 'the interests of justice . . . if it is clear petitioner has failed to state a colorable federal claim . . . .'" *Phillips v. Stickman*, 298 F. App'x 135, 137 (3d Cir. 2008) (quoting *Lambert v. Blackwell*, 134 F.3d 506, 514 (3d Cir. 1998) (citing *Granberry v. Greer*, 481 U.S. 129, 136 (1987))). In this case, as petitioner readily admits, this claim is premised on a finding that the identification procedure was unduly suggestive. As explained *supra*, petitioner's claim related to the identification procedure does not merit federal habeas relief. Therefore, this claim, which predicated on a finding that the identification procedure was unduly suggestive, also does not warrant granting federal habeas relief.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §

2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Applying this standard, the Court finds that a certificate of appealability shall not issue in this case.

## VI.    CONCLUSION

For the foregoing reasons, the habeas petition will be denied and a certificate of appealability shall not issue.  An appropriate order will be entered.

DATED:  October 7, 2013

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge